

MARK K. SCHONFELD (MS-2798)
REGIONAL DIRECTOR
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
3 World Financial Center
Room 4300
New York, New York 10281
(212) 336-1020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,  :
                                     :
                    Plaintiff,       :
                                     :
        -against-                    :
                                     :   06 Civ.    (   )
SPIRO GERMENIS,                      :
ORACLE SERVICES INC., and            :
ORACLE EVOLUTION, LLC,               :
                                     :
                    Defendants.      :
                                     :
ORACLE E FUND, LP,                   :
ORACLE J FUND, LP, and               :
ORACLE EVOLUTION CAPITAL, LLC,       :
                                     :
                    Relief Defendants.  :
-----------------------------------------------------------------x

## COMPLAINT

Plaintiff Securities and Exchange Commission, for its Complaint against defendants

Spiro Germenis ("Germenis"), Oracle Services, Inc.("Oracle Services"), Oracle Evolution LLC

("Oracle Evolution") (collectively the "Defendants") and against relief defendants Oracle E Fund

("E Fund"), Oracle J Fund ("J Fund"), and Oracle Evolution Capital LLC ("Oracle Capital")

(collectively, the "Relief Defendants"), alleges:

## SUMMARY

1.     Germenis, a principal of a New York State registered investment adviser, Oracle

Services, has disappeared after misappropriating millions of dollars in investor funds. On

October 13, 2006, Germenis's wife filed a missing person's report with local police. Germenis's

car was found at JFK airport and he has fled to Greece.

2.     Germenis's fraudulent scheme had two aspects. First, he solicited investors to

invest in certain funds he was sponsoring that, according to the offering materials, would invest

the money in equity securities. He then withdrew the investors' money from the funds'

brokerage accounts or otherwise diverted the investors' fund contributions to his own use.

Second, Germenis had clients for whom he provided investment management and advisory

services directly or through Oracle Services or Oracle Evolution. Abusing these clients' trust,

Germenis took money from their accounts for his own use. Over $6 million in client funds are

now missing. In both aspects of the scheme, Germenis created phony or altered account

statements that he provided to investors to conceal what he was doing with the money they had

entrusted to him. At least twenty five investors were victims of Germenis's fraud, and at least

nine of them were over sixty years old.

## VIOLATIONS

3.     By virtue of the conduct alleged in this Complaint:

a.     Germenis and Oracle Evolution, directly or indirectly, singly or in concert,

        are engaging, have engaged, and are about to engage in acts, practices and

        curses of business that constitute violations of Section 17(a) of the

        Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and

2

Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act")

[15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5];

b. Defendants, directly or indirectly, singly or in concert, are engaging, have engaged, and are about to engage in violations of Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and (2)]; and

c. Germenis has aided, abetted, counseled, commanded, induced, or procured Oracle Services' and Oracle Evolution's violations of Sections 206(1) and 206(2) of the Advisers Act[15 U.S.C. §§ 80b-6(1) and (2)] or is aiding, abetting, counseling, commanding, inducing or procuring such violations or is about to aid, abet, counsel, command, induce, or procure such violations.

4.     Unless Germenis, Oracle Services, and Oracle Evolution are temporarily restrained and preliminarily and permanently enjoined, they will continue to engage in the transactions, acts, practices, and courses of business alleged herein, and in transactions, acts, practices, and courses of business of a similar type and object.

## JURISDICTION AND VENUE

5.     The Commission brings this action pursuant to the authority conferred by Section 20(b) of the Securities Act [15 U.S.C. § 77t(a)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] and Sections 209 of the Advisers Act [15 U.S.C. §§ 80b-9 and 80b-14] seeking to temporarily restrain and preliminarily and permanently enjoin the Defendants from engaging in the wrongful conduct alleged in this Complaint. The Commission also seeks a final judgment

3

requiring the Defendants and Relief Defendants to disgorge any ill-gotten gains and to pay prejudgment interest thereon and Ordering the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9].

6.     This Court has jurisdiction over this action pursuant to Sections 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Sections 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(e), and 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

7.     The Defendants, directly or indirectly, singly or in concert, made use of the means or instruments of transportation or communication in, or the means or instrumentalities of, interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein. Certain of the alleged transactions, acts, practices, and courses of business occurred in the Eastern District of New York. Among other things, the offices of Oracle Services and Oracle Evolution are in the Eastern District of New York. Spiro Germenis also resided in the Eastern District in New York at all relevant times until he fled to Greece.

## THE DEFENDANTS

8.     **Spiro Germenis,** age 34, of Dix Hills New York, is the co-founder of Oracle Services, an investment adviser through which he managed individual investors' accounts. He is also the founder of Oracle Evolution, an entity through which he managed the Oracle funds as well as some individual investors' accounts.

9.     **Oracle Services** is a New York corporation with its principal place of business in Great Neck, New York. Incorporated on May 13, 1997, it is jointly owned by Spiro Germenis

4

and another individual. Oracle Services is registered as a New York State investment adviser but is not registered with the Commission in any capacity.

10.    **Oracle Evolution** is a Delaware limited liability company with its principal place of business in Great Neck, New York. Formed in May 2003 by Germenis, it is the management company for the E Fund and the J Fund and it was the management company for the Oracle L Fund, LLP ("L Fund") until its liquidation in early 2006. Spiro Germenis is the sole member and the managing member of Oracle Evolution.

## RELIEF DEFENDANTS

11.    **E Fund** is a Delaware limited partnership with its principal place of business in Great Neck, New York. It was organized by Germenis on March 22, 2006. Oracle Capital is the general partner and Oracle Evolution is the manager of the E Fund.

12.    **J Fund** is a Delaware limited partnership with its principal place of business in Great Neck, New York. It began operations in 2003. The J Fund's general partner is Oracle Capital and its management company is Oracle Evolution. Although the J Fund was liquidated beginning in January 2006, Germenis solicited new J Fund investors beginning in March 2006.

13.    **Oracle Capital** is a Delaware limited liability company with its principal place of business in Great Neck, New York. Organized on June 22, 2003 by Germenis, it is the general partner for the E Fund and for the J Fund. Germenis is the managing member of Oracle Capital.

## OTHER RELEVANT ENTITY

14.    **L Fund** was incorporated in the Cayman Islands on April 4, 2005 with its principal office in Hamilton, Bermuda. The L Fund was registered as a mutual fund with the

5

Cayman Islands Monetary Authority until on or about May 30, 2006. Its management company was Oracle Evolution. Germenis liquidated the L Fund beginning in January 2006.

## FACTS

### GERMENIS AND THE ORACLE ENTITIES

15. Germenis operated two different but related investment adviser operations out of the same offices in Great Neck, New York – Oracle Services and Oracle Evolution.

16. Often through Oracle Services and sometimes through Oracle Evolution, Germenis provided investment advisory services to individual clients and managed their investments. Germenis began managing client accounts through Oracle Services in or around 1997. Germenis held his clients' funds at various institutions including Charles Schwab, UBS, TD Waterhouse, TD Ameritrade, Fidelity, and Shoreline Trading Group LLC.

17. In 2003, Germenis formed Oracle Evolution, which he used to manage the E Fund, the J Fund and the L Fund. Germenis is also the managing member of Oracle Capital, which is the general partner of E Fund and J Fund. Germenis began soliciting investments in the J Fund in 2003 and the L Fund in 2005.

19. In January 2006, Germenis liquidated both the J Fund and the L Fund following the resignation of the J Fund's auditors, Eisner LLP, and its counsel, Seward and Kissell LLP. According to Eisner's January 9, 2006 resignation letter, Eisner resigned because it had learned that its audit opinion for the J Fund's year ended December 31, 2004 and for the period from September 1, 2003 through December 31, 2003 "was attached to financial statements which we did not audit or review, as opposed to the actual financial statements which we did audit for the same periods." On or about January 21, 2006, Germenis sent a letter to the J Fund and L Fund

6

investors informing them of the resignations of the J Fund's auditors and counsel and stating,

"we have decided to redeem all investments in both the Oracle J Fund and the Oracle L Fund."

## GERMENIS AND ORACLE EVOLUTION'S FRAUDULENT SCHEME USING THE J FUND AND E FUND

18.     After the liquidation of the J Fund and the L Fund, Germenis recommenced the

J Fund and created the E Fund, and proceeded with a fraudulent scheme to take investors'

money. Through Oracle Evolution, Germenis solicited many of the investors who had invested

in the original J Fund. To solicit investments, Germenis distributed a new private offering

memorandum for the J Fund dated March 2006 and a private offering memorandum for the

E Fund dated April 1, 2006.

19.     According to its March 2006 private offering memorandum, the J Fund's

"investment objective is to seek to achieve above average short-term capital appreciation by

using technical analysis and risk management. This will primarily be accomplished by investing

in both the long and short sides in publicly-traded equity securities, while locking in profits by

positioning stop losses."

20.     The E Fund's description of its investment objective in its April 2006 private

offering memorandum is similar to the J Fund's, except that it adds: "The Partnership will seek

to maximize capital appreciation by utilizing OTC derivative options, which will entail the use of

substantial leverage."

21.     The offering memoranda for the J Fund and E Fund both provided that Oracle

Evolution, as fund manager, would be entitled to receive annually a percentage of assets under

management as a management fee.

7

22.     Through the use of the offering memorandum, letters on Oracle Evolution letterhead and oral representations regarding the benefits of investing in the J Fund and E Fund, Germenis solicited at least 25 investors to invest in the reconstituted J Fund or the E Fund. However, instead of investing the money he raised as he represented he would, Germenis took nearly all of the money for his own use.

23.     For example, in early 2006, after the liquidation of the J Fund, Germenis solicited an investor who had invested more than $1 million in the original J Fund to re-invest his money in the reconstituted J Fund. The investor, who is 66 years, agreed, believing that Germenis would invest the money in the J Fund in accordance with its investment objectives. Contrary to his representations, Germenis did not invest the money in the J Fund. The investor was unaware that his money had not been invested in the J Fund until he called the J Fund administrator after learning of Germenis's disappearance and was told that there was no record of his investment.

24.     A second investor, also 66 years old, gave Germenis approximately $43,000 to invest in the J Fund. Germenis never invested the $43,000 in the J Fund, but instead took the money for his own use.

25.     Investors in the E Fund suffered a similar fate. Through use of the E Fund offering memorandum and oral representations, Germenis convinced at least five investors to give him at least $1,375,000 to invest in the E Fund. Of the $1,375,000 given to Germenis, about only half -- $649,995 -- ever made it into the E Fund's brokerage account.

26.     Germenis began withdrawing the money that he did deposit into the E Fund account almost immediately. Account statements for the E Fund brokerage account show an initial deposit of $524,955 on April 7, 2006, and a withdrawal of $25,000 on April 18. Between

8

April 18 and the end of August, Germenis withdrew $658,442.70, which included the net proceeds of securities transactions. All of the withdrawn funds were wired to an account at the Bank of New York. The current balance of the E Fund's brokerage account is $1,533.90.

27.     Germenis concealed his fraud from J Fund and E Fund investors by sending them false account statements, which reflected growth in the investment, when in fact, Germenis had misappropriated their money. For example, one investor who gave Germenis approximately $43,000 to invest in the J Fund, received statements from Germenis showing balances ranging from $61,546.86 at the end of April 2006 to $65,036.54 at the end of August 2006. However, these statements were false, as there is no record that the investor's money was invested. Similarly, another investor thought he had invested $60,000 in the J Fund and received account statements from Germenis showing his investment had increased to $73,571 as of August 31, 2006. This account statement was also false; there is no record that the investor's money was ever invested in the J Fund.

## MISAPPROPRIATION
## OF INDIVIDUAL ADVISORY CLIENTS' MONEY

28.     Investors who lost money that they believed they had invested in the E Fund and J Fund were not the only victims of Germenis's fraudulent scheme. Germenis also provided advisory services to clients directly or through Oracle Services or Oracle Evolution. Some of these clients invested in the E Fund and the J Fund and some did not. Germenis had discretionary authority over the individual client investment accounts in addition to the control he exercised over the funds' investment accounts. Germenis abused this authority by transferring money from his clients' accounts for his own use. As with the fund clients,

9

Germenis often used fake account statements to conceal the true condition of the individual clients' investments.

29.     For example, in January 2006, one client gave Germenis and Oracle Services $3 million to invest. Germenis told the client he would place his investment in conservative fixed income products and that because of the size of the client's investment, he would give him access to IPO allocations. Germenis opened 3 accounts for the client at UBS, one in the client's name and the others named "Oracle Services FBO [the client's name]." The client wired $3 million from an account at Fidelity and on January 23, 2006 the money was deposited into one of the UBS accounts named "Oracle Services FBO [the client's name]." The next day, on written instructions from Germenis, UBS wired those funds to Oracle Capital's account at North Fork Bank. Germenis then transferred the $3 million from the North Fork account to various payees, without the client's knowledge or consent. For the first eight months of 2006, Germenis sent to the client account statements reflecting balances of approximately $3 million. The account statements were fake, fabricated by Germenis to conceal his misappropriation of the client's money. In September, Oracle Service's co-owner discovered that Germenis had taken the client's money and told Germenis to return it. After bouncing three checks, Germenis eventually returned $1.2 million to the client, leaving the client with a loss of approximately $1.8 million.

30.     Another client gave Germenis and Oracle Services $300,000 to invest in certificates of deposit at Charles Schwab. Germenis deposited the money in a Schwab account on August 16, 2006, but almost immediately began transferring the money out without the client's knowledge or authorization. When the client contacted Schwab after learning of Germenis's disappearance, he was told that only $3,228 remained of his $300,000 investment.

31.     Several clients gave Germenis their retirement accounts to manage. For example, a married couple gave Germenis and Oracle Services more than $177,000 from a retirement account to manage in 1998. The agreement the clients signed with Oracle provided that, with respect to fees, the clients would pay, on a quarterly basis, ".0025% of the net assets invested in the mutual funds" and ".00625 of the net assets invested in individual securities." Oracle Services and Germenis began looting the account by charging monthly management fees of up to $9,500, without the clients' consent and contrary to the terms of the agreement between Oracle Services and the clients. Under the agreement, the clients should have been charged a quarterly fee that would have been a small fraction of the monthly fee Germenis extracted for himself. Germenis gave the clients phony account statements reflecting growth in the account but not mentioning the exorbitant, unauthorized fees.

32.     The couple also periodically received statements in the mail from the brokerage house at which the account was maintained reflecting a much lower balance. On numerous occasions, the wife asked Germenis about the statements reflecting a low balance. Each time, Germenis assured her that the account statement reflecting a low balance was a mistake and offered a reason. For example, in February 2006, the couple received a Fidelity statement in the mail showing a balance of about $45,619.39. The wife called Germenis, who came to her house and handed her an account statement that he had fabricated for the same period showing an account balance of $251,566.29. Germenis assured her that the Fidelity statement they had received was wrong. In fact, the Fidelity statement was correct. The clients' account currently has just over $40,000.

11

33. Including the examples above, a total of at least twenty five investors have lost a total of at least $6 million that they invested in Germenis's various funds and the individual clients' accounts.

## USE OF RELIEF DEFENDANTS' ACCOUNTS TO MOVE INVESTOR FUNDS

34. Germenis co-mingled investors' funds and moved millions of dollars into and through various accounts he controlled, including bank accounts at the North Shore Bank in the name of the J Fund, the E Fund, and Oracle Capital. For example, on January 24, 2006, Germenis transferred $3 million from an investor's brokerage account at UBS to an Oracle Capital bank account at North Shore. On May 5, 2006, Germenis transferred $134,266 of another investor's funds from a Shoreline IRA account to the E Fund account at North Fork Bank. Soon thereafter, he transferred most of those Funds to a J Fund account also at North Fork.

## GERMENIS'S RECENT ATTEMPTS TO SECURE MONEY
## AND HIS DISAPPEARANCE

35. In the weeks before his disappearance, Germenis made several attempts to secure large sums of money after the other owner of Oracle Services discovered that Germenis had misappropriated $3 million of an investor's money and confronted him. On October 4, 2006 Germenis secured a $500,000 loan from a family member after telling him that he had lost a client's $3 million investment. During the week of October 9, 2006, in an effort to raise $3-5 million, Germenis unsuccessfully solicited an investor for a special investment with a guaranteed return of 7% in 45 days. And on October 11, Germenis attempted to secure a loan from a Connecticut investment adviser. However, after the investment adviser refused to lend Germenis

12

the money after discovering that Germenis's collateral -- an insurance policy -- had no cash value.

36.     Germenis has not returned to his home since October 12, 2006.  His wife filed a missing persons report with local police on October 13, 2006.  Germenis's car was found in a parking lot at JFK Airport.  He has fled to Greece.

## FIRST CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act
### [Defendants Germenis and Oracle Evolution]

37.     The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 36, above.

38.     Spiro Germenis and Oracle Evolution, directly and indirectly, singly and in concert, knowingly or recklessly, by the use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or by the use of the mails, in the offer or sale of securities:   (a) have employed, are employing, or are about to employ devices, schemes or artifices to defraud; (b) have obtained, are obtaining, or are about to obtain money or property by means of untrue statements of material fact, or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) have engaged, are engaging, or are about to engage in transactions, acts, practices and courses of business which operated or would operate as a fraud or deceit upon purchasers of securities or other persons.

13

39. By reason of the foregoing, Germenis and Oracle Evolution, directly or indirectly, singly or in concert, have violated, are violating, and unless enjoined will again violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 [Defendants Germenis and Oracle Evolution]

40. The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 36, above.

41. Defendants Germenis and Oracle Evolution, directly or indirectly, singly or in concert, knowingly or recklessly, by use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase and sale of securities: (a) have employed, are employing, or are about to employ, devices, schemes and artifices to defraud; (b) have made, are making, or are about to make untrue statements of material fact, and have omitted, are omitting, or are about to omit to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or (c) have engaged, are engaging, or are about to engage in transactions, acts, practices and courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

42. By reason of foregoing, the Defendants, directly or indirectly, singly or in concert, have violated, are violating, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5].

14

## THIRD CLAIM FOR RELIEF

### Violations of Sections 206(1) and 206(2) of the Advisers Act
### [All Defendants]

43.     The Commission realleges and incorporates by reference the allegations contained

in paragraphs 1 through 36, above.

44.     Defendants Germenis, Oracle Services, and Oracle Evolution at all relevant times

were investment advisers within the meaning of Section 202(11) of the Advisers Act [15 U.S.C.

§ 80b-2(11)].

45.     Defendants Germenis, Oracle Services, and Oracle Evolution, directly or

indirectly, singly or in concert, knowingly or recklessly, through use of the mails or any means

or instrumentality of interstate commerce, while acting as investment advisers within the

meaning of Section 202(11) of the Advisers Act [15 U.S.C. § 80b-2(11)]:  (a) have employed,

are employing, or are about to employ devices, schemes, and artifices to defraud any client or

prospective client; or (b) have engaged, are engaging, or are about to engage in acts, practices, or

courses of business with operates as a fraud or deceit upon any client or prospective client.

46.     By reason of the foregoing, Defendants violated Sections 206(1) and 206(2) of the

Advisers Act [15 U.S.C. § 80b-6(1) and (2)], and unless enjoined will continue to violate

Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)].

47.     Germenis, directly or indirectly, singly or in concert, knowingly or recklessly,

aided, abetted, counseled, commanded, induced, or procured, Oracle Services' and Oracle

Evolution's  violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1)

and (2)], or is aiding, abetting, counseling, commanding, inducing, or procuring, or is about to

aid, abet, counsel, command, induce, or procure such violations by Oracle Services and Oracle
Evolution, and unless enjoined will continue to violate or aid and abet violations of Sections
206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)]..

## FOURTH CLAIM FOR RELIEF

### Relief Defendants Oracle E Fund, Oracle J Fund, and Oracle Evolution

48.     The Commission realleges and incorporates by reference the allegations contained
in paragraphs 1 through 36, above.

49.     Some or all of the proceeds of Defendants' fraudulent conduct alleged above were
received by or transferred to, and on information and belief, remain in an account or accounts in
the name of Relief Defendants, or are otherwise in their possession and control.

50.     Relief Defendants each received, without consideration, proceeds of the
fraudulent conduct alleged above.  Each of these Relief Defendants profited from such receipt or
from the fraudulent conduct alleged above by obtaining illegal proceeds under circumstances in
which it is not just, equitable or conscionable for them to retain the illegal proceeds.
Consequently, each of these entities has been named as a Relief Defendant for the amount of
such proceeds by which each has been unjustly enriched as a result of the fraudulent conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief:

### I.

An Order temporarily and preliminarily, and Final Judgments permanently, restraining
and enjoining defendants Germenis and Oracle Evolution, their agents, servants, employees and
attorneys and all persons in active concert or participation with them who receive actual notice of

16

the injunction by personal service or otherwise, and each of them, from future violations of
Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; and Section 10(b) of the Exchange Act
[15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

## II.

An Order temporarily and preliminarily, and Final Judgments permanently (1) restraining
and enjoining each of the Defendants, their agents, servants, employees and attorneys and all
persons in active concert or participation with them who receive actual notice of the injunction
by personal service or otherwise, and each of them, from future violations of Sections 206(1) and
206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and (2)]; and (2) restraining and enjoining
defendant Germenis from aiding, abetting, counseling, commanding, inducing, or procuring
future violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and
(2)].

## III.

An Order freezing all the assets of Defendants Germenis, Oracle Services, Oracle
Evolution, and Relief Defendants E Fund, J Fund, and Oracle Capital.

## IV.

An Order directing Defendants and Relief Defendants to file with this Court and serve
upon the Commission, within five business days, or within such extension of time as the
Commission agrees in writing or as otherwise ordered by the Court, verified written accountings,
signed by each of them under penalty of perjury.

## V.

An Order permitting expedited discovery.

17

## VI.

A Final Judgment ordering Defendants and Relief Defendant to disgorge their ill-gotten gains and to pay prejudgment interest thereon.

## VII.

An Order enjoining and restraining each of the Defendants and Relief Defendants, and any person or entity acting at their direction or on their behalf, from destroying, altering, concealing, or otherwise interfering with the access of the Commission to relevant documents, books and records.

## VIII.

A Final Judgment ordering defendants Germenis and Oracle Evolution to pay civil money penalties pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act, and all Defendants to pay civil penalties pursuant to Section 209(e) of the Advisers Act..

18

## IX.

Such other and further relief as the Court deems appropriate.

Dated: New York, New York
       November 16, 2006

MARK K. SCHONFELD (MS-2798)
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
3 World Financial Center
New York, New York 10281
Tel:  (212) 336-1020

*Of Counsel:*

Andrew M. Calamari
Robert J. Keyes
James M. McGovern
Celeste A. Chase
George G. Demos
Dina Levy
Courtney Fennimore

19